EJECTMENT.

Case 5.

## Grimes and wife *vs* Redmon.

### ERROR TO BOURBON CIRCUIT.

1. The 2d section of the act of 1798, has no application to an action to recover land which has been given in exchange for other lands where, by the terms of the exchange, the party who might be

evicted of the land received was to be restored to the title and possession of the land given.

2. According to the law applicable to an exchange of land, independently of express contract, either party had a right, in case of loss of the land received, to re-enter upon the land given—which gave title.

3. In such case the warranty presents no estoppel to the re-entry of the grantor, or his heir, who has lost the land received in exchange.

Judge MARSHALL delivered the opinion of the court.

December 10.

Case stated.

This action of ejectment was brought by Grimes and wife to recover a small piece of land which had been conveyed in 1817, by Warren Bates, the father of Mrs. Grimes, to John Smeltzer, who afterwards conveyed it to Redmon. It appears that Bates and Smeltzer agreed to exchange equal quantities of the adjoining tracts of land occupied by them; and in execution of that agreement each conveyed to the other three acres and fourteen poles of land, by deed, reciting as its consideration, that the parties had agreed on and made an exchange, &c.; and containing, immediately after the usual clause of general warranty the following provision: " And it is moreover expressly agreed and understood by the parties hereto, that if the land hereby conveyed, or any part thereof, should be lost by any prior or better claim, that then, and in that case, the land given in exchange for that which is hereby conveyed shall be returned and re-conveyed to the said grantor, or so much thereof as will compensate said loss, quantity for quantity."

The land conveyed by Bates was the fee simple estate of his wife, who never executed the deed, though it purported to be in her name, as well as that of her husband. In 1830 the land conveyed by Smeltzer to Bates, in exchange was lost by a better claim, and after the death of Bates and his wife, this action was commenced upon the title of Mrs. Grimes, a daughter and one of the heirs of Mrs. Bates, and also of Warren Bates.

Upon evidence conducing to prove that Grimes and wife had received from the estate, and under the will of Warren Bates, in right of Mrs. Grimes, property,

GRIMES & WIFE
vs.
REDMON.

and especially a slave and some personalty of greater value than the land in contest, the court, on motion of the defendant, instructed the jury to the effect, "that although the lessors of the plaintiff had shown title, yet if they had received by devise or descent from Warren Bates an estate of larger value than the land in controversy, they must find for the defendant;" and a verdict and judgment having been rendered for the wife, the case is brought up on exceptions to the instruction above stated, and to the refusal to grant a new trial. All of which, however, present the single question whether the instruction is correct.

1. The 2d section of the act of 1798, has no application to an action to recover land which has been given in exchange for other land where, by the terms of the exchange, the party who might be evicted of the land received was to be restored to the title and possession of the land given.

The instruction was based upon the 2d section of the act of 1798, *Statute Law,* 779, which enacts, that "if the deed of the alienor doth mention that he and his heirs be bound to warranty; and if any heritage descend to the demandant of the side of the alienor, then he shall be barred for the value of the heritage that is to him descended." But waiving the objection that the terms of the instruction are broader than those of the statute, by the use of the word "estate," instead of "heritage," and of the words received by descent or devise instead of "descend," we are of opinion that if the case came within the words of the statute with respect to the estate received from the alienor, and if it might be supposed to be literally within the bar declared by the statute, it would still be so clearly outside of the object and intent of the enactment that it could not be reasonably included within its operation. For, although it is true that the deed of Bates contains a warranty purporting to bind his heirs, and which, to the extent of the value of any heritage descended from him to them, would bar them from recovering merely on the ground that a better title than that which passed by his deed had descended to them from another ancestor. Yet, as this deed shows explicitly that it is made in consequence and in consideration of an exchange of lands, of which it is a part and in fact the consummation; as it is not only the implied law of such a transaction, but upon com-

parison of the reciprocal deeds by which it was consummated, and which must be taken together as one transaction, it is found to be the express law of this particular transaction, that if either party shall loose by a better claim the land which he has received in exchange, he becomes thereby immediately entitled to the land which he has given in exchange; and as, by the implied law of an exchange, the party thus loosing may immediately enter upon the land given in exchange for it, while by the express stipulations of these parties he who has not lost is bound to restore and reconvey the land, which he has received, to the party who has lost, quantity for quantity; we perceive at once, that the general warranty contained in each deed is qualified and restricted, both by the nature of the transaction as an exchange, and by the express stipulation of the other deed, so as to make the lawful eviction of either party from the land received by him an exception to the general terms of the warranty, and thus to free him in such case from the estoppel which might otherwise prevent him from reclaiming the land which he had conveyed with warranty.

If the express warranty contained in each deed supercede the warranty implied in an exchange, still each party has covenanted that, in case the other shall be evicted, he will return and reconvey to him an equal quantity of the land received in exchange. But it is entirely obvious that the covenants in these deeds were intended to secure by express stipulations the same rights, and to impose the same obligations, as were implied by the ancient law in case of exchange of lands, with the additional right on the one side of having, and on the other the obligation of making, a reconveyance in case of lawful eviction—which was not necessary by the ancient common law, because the lawful re-entry of the party was itself sufficient to re-invest him with the title. Whether, in case of a technical exchange, it would now be sufficient, we need not consider. Here there is an express covenant

2. According to the law applicable to an exchange of land, independently of express contract, either party had a right, in case of loss of the land received, to re-enter upon the land given—which gave title.

GRIMES & WIFE
    *vs.*
REDMON.

to re-convey as well as to return the land received on one side, in case of eviction from the land received on the other; and the intent of this covenant was not only to entitle the party evicted from the land received, to a re-conveyance of the land given in exchange, but also to a return or re-possession of the land even before a conveyance, and in conformity with the right of entry implied in such case by the law of exchange. For as the re-conveyance itself would entitle the grantee to the possession, it would have been useless to stipulate for a return of the land if no other right was intended to be secured but that which would necessarily flow from the re-conveyance itself.

3. In such case the warranty presents no estoppel to the re-entry of the grantor, or his heir, who has lost the land received in exchange.

If this be the effect of the covenant, the fact of the mutual conveyances by way of exchange, and of the eviction of one party, would give him a right to re-enter upon the land given in exchange, without other title; and his deed and warranty could not be set up against him, because the consideration of his grant and warranty would have failed, and the restoration of what he had given would not only be the appropriate but the stipulated compensation for his loss. The warranty, therefore, if not the conveyance containing it, would be regarded as terminated or nullified by the eviction of the warrantor. It would no longer bind him, and would of course be of no effect against his heirs, who might recover the land as he might have done without other right than that growing out of the exchange and the eviction.

But the question here is not whether Bates had a legal right of entry upon being evicted, but whether he was any longer bound to warrant the land given in exchange, after he had been evicted from that received in exchange, and as we are of opinion that, whether the eviction gave him a legal right of entry upon the land conveyed to Smeltzer or not, it extinguished his obligation to warrant that land against other claims, and relieved him from any estoppel growing out of his warranty, his heirs were of course not bound by the warranty, and therefore the statute which has been

referred to has no more application to the case than if Smeltzer had released Bates from his warranty.

Under these views the instruction was erroneous, and obviously prejudicial. Whereupon, the judgment is reversed, and the cause remanded for a new trial.

MOREHEAD and BROWN for plaintiffs.